**REPUBLIC NATIONAL BANK OF DALLAS, Creditor, Appellant,**

v.

**Robert G. VIAL, Trustee for The Ronston Corporation, Bankrupt, Appellee.**

**No. 15652.**

United States Court of Appeals
Fifth Circuit.

April 19, 1956.

786

Larry DeBogory and DeBogory & De-Bogory, Dallas, Tex., for appellant.

Philip I. Palmer, Dallas, Tex., for appellee.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This appeal by the Republic National Bank of Dallas is from an order of the District Court confirming, on petition for review, an order entered by the referee in the involuntary bankruptcy proceedings of the Ronston Corporation. The order rejected the bank's assertion of a valid lien on certain accounts receivable, allowed the bank's claim as an unsecured claim only, and required it to return to Robert G. Vial, who was trustee of the bankrupt's estate, the amount of certain collections which had been made on the accounts receivable during the four months preceding September 29, 1954, which was the date of the adjudication of bankruptcy.

On August 18, 1953, more than a year before bankruptcy, the appellant and the bankrupt entered into a continuing creditor-debtor relationship under the terms of which the bankrupt was to borrow money from appellant and simultaneously assign various accounts receivable as collateral security therefor. On that date, a written memorandum of agreement was entered into with the understanding that when money was needed by the bankrupt, it would execute and deliver a "Schedule of Accounts Receivable Assigned to Republic National Bank of Dallas", whereupon appellant would advance a loan amounting to 85% of the face value of the accounts shown on the schedule. In addition the bankrupt also executed a "Notice of Assignment of Accounts Receivable" [1] which was to be effective for three years, or until August 18, 1956, and this notice was duly filed with the County Clerk. Thereafter, whenever a new list of accounts receivable was presented to appellant to be pledged as collateral, entries were made on the books of the bankrupt, showing that each of the listed accounts was pledged, and appellant then loaned the bankrupt an amount equal to 85% of the face value of the listed accounts. Appellant continued to lend money to the bankrupt under this arrangement until

1. The Notice of Assignment reads as follows:

"Notice is hereby given that Ronston Corp. whose mailing address is 240 Comstock, Dallas, Texas, and whose place of business is 240 Comstock, Dallas, Texas, has assigned or intends to assign one or more accounts to Republic National Bank of Dallas, whose mailing address is P.O. Box 5961, Dallas 2, Texas, and whose place of business is 1315 Main, Dallas, Texas, and that this notice of assignment shall be effective for the period of August 18, 1953 to August 18, 1956."

as late as June 15, 1954. The bankrupt made most[2] of the collections on these assigned accounts and delivered to the appellant all sums so collected by depositing same to the credit of the appellant in a special "collateral account". At no time were the collections used by the bankrupt for purposes other than to satisfy its indebtedness to the appellant. When the full amounts of the accounts so pledged had been collected, 15% of their face value was returned to the bankrupt under the terms of the August 18, 1953, agreement. During the four months prior to bankruptcy, May 29 through September 29, 1954, appellant received collections totalling $11,142.83.[3] Of this amount $6,641.42 represented collections on accounts which had been assigned prior to May 29, whereas $4,501.41 was collected on accounts assigned within four months of bankruptcy.

The claim of appellant was that under the terms of the assignments and by virtue of the recorded notice it had a valid lien upon these collections. The trustee in turn objected to the allowance of the claim as a secured claim on two grounds: (1) that the payments of collections on the assigned accounts receivable were made or suffered by the bankrupt at times when appellant had reasonable cause to believe the bankrupt was insolvent, and because the assignments were not protected under Art. 260–1 of the Revised Civil Statutes of Texas, Vernon's Arn.Civ.St.Tex., the payments constituted fraudulent transfers which were voidable under Sections 60 and 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. §§ 96, 110, sub. e, and (2) that the payments of the collections constituted a voidable preference under Sections 60 and 70 of the Act because they were made on account of an antecedent debt and when paid appellant had reasonable cause to believe that the bankrupt was insolvent. The trustee thus

contending for the avoidance of the preference alleged to have been received by the appellant, counter-claimed seeking the return of the full amount of the collections to the estate of the bankrupt.

At the hearing which was had before the referee, it was established as an uncontroverted fact that none of the accounts receivable on which the disputed collections were made was in existence at the time the statutory notice of assignment was recorded. The evidence was also sufficient to warrant the inference that the bankrupt was insolvent only on and after June 18, 1954. Evidence was adduced in an effort to show that at the time of the payment of the various collections made from June 1 through August 26, 1954, appellant had reasonable cause to believe that Ronston Corporation was insolvent, that is to say, a knowledge of some facts calculated to produce such a belief in the mind of an ordinarily intelligent man. This evidence was that appellant handled all of the bankrupt's financing; that it had received numerous financial statements from the bankrupt; that it was aware of the fact that the bankrupt had old debts which it had been unable to pay; and, that in June, 1954, it became clear to appellant that the bankrupt was in serious financial difficulty.

At the conclusion of the hearing, the referee entered his order, bottomed on the findings therein set forth and which are:

"(a) That a part of the security for the debt of the Republic National Bank is alleged to be an original written assignment of accounts receivable of date August 18, 1953, as permitted by Art. 260–1 R.S. of Texas, relating to assignments, of accounts receivable, but which original assignment has never been filed of record in Dallas County, Texas;

---

2. When the bankrupt became seriously involved in June, the appellant undertook to make the collections.

3. The collections were as follows:

| | | | |
|---|---|---|---|
| May 29.......... | 0 | July 8........... | $2,823.54 |
| June 1........... | $2,469.06 | July 19.......... | 21.00 |
| June 15.......... | 886.54 | July 20.......... | 3,627.36 |
| June 18.......... | 801.88 | August 26........ | 513.45 |

"(b) That notice of intention to make an assignment of assignor's accounts to assignee was executed and delivered to the Bank on August 18, 1953, and this notice of intention to give an assignment was filed of record at Dallas County, Texas on September 3, 1953. That within four months prior to the date of bankruptcy the assignee, Republic National Bank collected and received payment upon said accounts receivable amounting to the sum of $11,142.83. That during the said period the Bank had reasonable cause to believe that the assignor was insolvent and the accounts were given to secure a pre-existing debt owing by the bankrupt to the Republic National Bank.

"That the original assignment of date August 18, 1953, was delivered to the Bank * * * and the assignment together with the intention to give an assignment is not sufficient for compliance with Art. 260–1, to-wit: they do not represent any existing or future right to receive the payment of money due or to become due under an existing contract as therein provided for. Said accounts were not created and did not come into existence until long after the date of the original assignment of August 18, 1953. Therefore, the same is not sufficient to be classed as a protected assignment permitted by Subdivision 3 of the said Art. 260–1."

On petition for review, the court being of opinion that the findings and conclusions of the referee were correct, affirmed the order, and this appeal followed.

This brings us to the merits of the controversy. Article 260–1 of the Revised Civil Statutes of Texas in pertinent part provides that an account receivable "means an existing or future right to the payment of money presently due, or to become due (a) under an existing contract * * * ." It further provides that assignments of such accounts "may be protected by the execution and delivery by the assignor to the assignee of an instrument or instruments in writing, assigning such * * * accounts and describing * * * the accounts assigned with sufficient particularity to identify the same, and by the filing for record the 'Notice of Assignment' " which shall contain the names and addresses of the assignor and assignee, a statement that the assignor has assigned or intends to assign one or more accounts to the named assignee, and a statement of the period of time for which such notice is to be effective. In Keeran v. Salley, 244 S.W.2d 663, 666, writ of error refused, the Court of Civil Appeals of Texas held:

"The filing of the notice of assignment of July 14, 1949, does not give the bank a prior right to the fund impounded by the writ of garnishment for the reason that the statute, Article 260–1, relating to assignment of accounts, defines the word 'account' or 'account receivable' as meaning 'an existing or future right to the payment of money *presently* due, or to become due *under an existing contract; * * *.'* The contract which gave rise to the 'account' here involved was obviously not in contemplation when the notice was executed."

This decision thus established the proposition that the filing of Notice of Assignment under Art. 260—1 protected only accounts which were in existence when the Notice was executed.[4] This is

---

4. Thereafter, by Acts 1955, 54th Leg., p. 823, ch. 305, § 1, Art. 260–1 was amended to provide that accounts receivable "means an existing or future right to the payment of money presently due, or to become due (a) under an existing contract *or under a future contract en-* *tered into during the effective period of the notice of assignment * * *."* By the same amendment it was also provided that the Notice of Assignment "shall protect the assignment of accounts which arise during such effective period and which originate out of existing or future

dispositive of the issue here. Accordingly, we conclude that appellant did not acquire a valid lien on the disputed collections because none of the assignments of the accounts here involved was protected by the Notice of Assignment.

We are also of opinion that appellant's rights were inferior to those of the trustee because under the 1950 amendment[5] to Section 60, sub. a (6) of the Bankruptcy Act, Congress provided that the recognition of equitable liens would be denied where, as here, available means of perfecting legal liens have not been employed. Consequently, under none of the assignments here at issue did the appellant acquire a lien on collections made during the four months period which was superior to that of the trustee.

The relationship between the parties was simply that of debtor and creditor and the collections after May 29 can be characterized only as payments on account of an antecedent debt. Section 60 of the Act denominates such payments as a preference which may be avoided if the creditor has at the time when such payments are made reasonable cause to believe that the debtor is insolvent. To be sure, the law presumes that the payment is legal. To overcome this presumption and establish the essential elements of a voidable preference, the burden of proof is on the trustee. Canright v. General Finance Corporation, 7 Cir., 123 F.2d 98. By "reasonable cause" is meant knowledge of such facts as to induce a reasonable belief as opposed to suspicion, i. e., the creditor must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency. Grant v. First Nat.

Bank, 97 U.S. 80, 24 L.Ed. 971. The referee found from the evidence adduced at the hearing that during the four months preceding bankruptcy appellant did have reasonable cause to believe that the bankrupt was insolvent, and the referee's findings of fact must be upheld unless clearly erroneous. General Order of Bankruptcy 47, 11 U.S.C.A. following section 53. On careful review of the record, we cannot say that the referee's finding in this particular was clearly erroneous insofar as it bears on the collections amounting to $7,787.23 which were paid to appellant on and after June 18, 1954. But with reference to the $3,355.60 of collections paid after May 29, 1954, and prior to June 18, we are left with a definite and firm conviction that a mistake has been committed. It would serve no useful purpose to give in this opinion a full statement of all the evidence, but it is sufficient to say that after very deliberate consideration of the testimony in all its phases, we find it insufficient to show that prior to June 18, the appellant had reasonable cause to believe the bankrupt was insolvent. The most that can be said of this evidence is that it does not warrant the inference that the appellant could have entertained a well-founded belief as opposed to a mere suspicion that Ronston was insolvent prior to June 18. The order of the District Court must, therefore, be reversed in part and modified by eliminating therefrom the sum of $3,355.60 representing collections made prior to June 18, and as so modified the order of the District Court requiring appellant to pay to the trustee, for the benefit of the estate of the bankrupt, the sum of $7,787.23 is hereby affirmed.

contracts, and are assigned by assignor to assignee at any time during such * * * period, regardless of whether such account was in the contemplation of the assignor and assignee when such notice was executed." No provision of the amendatory act provides that it shall be retroactive, thus the rights of the parties are governed by the Texas law as it existed prior to the amendment of 1955.

5. Act of March 18, 1950, 64 Stat. 24.