In the Matter of **SUPERMERCADOS SAN JUAN, INC., Bankrupt.**

Appeal of **PUEBLO WHOLESALE CO., INC., Appellant.**

No. 77–1301.

United States Court of Appeals, First Circuit.

May 2, 1978.

Eduardo Morales Coll, Santurce, P. R., for appellant.

Ismael H. Herrero, Jr., San Juan, P. R., with whom Correa Calzada, Collazo Salazar, Herrero & Lazaro Paoli, San Juan, P. R., was on brief, for bankrupt.

Before COFFIN, Chief Judge, MOORE *, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

On March 17, 1970 officials of Supermercados San Juan, Inc. endorsed two promissory notes of which Supermercados was payee to the order of appellant, Pueblo Wholesale Co., Inc. (hereafter Pueblo). The notes were endorsed and delivered to appellant pursuant to a pledge agreement executed on the same day. Under the terms of the agreement the notes were to serve as a guarantee or collateral for an antecedent debt of $46,694.61 owed to appellant by Supermercados. The pledge agreement was for a term of one year.

Supermercados filed a petition in bankruptcy on March 29, 1971, less than two weeks after the pledge expired. Some time later the bankruptcy trustee filed a complaint against Pueblo urging that the transfer of the promissory notes took place within four months of the petition in bankruptcy and constituted a voidable preference under the Bankruptcy Act § 60, 11 U.S.C. § 96.[1]

The principal issue in this appeal is whether the transfer in question took place within the suspect four month period. The Bankruptcy Act has its own criterion by

---

* Of the Second Circuit, sitting by designation.

1. Section 60(a)(1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1) states, "A preference is a transfer, as defined in this Act [this title], of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act [this title], the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

which we must determine when the transfer took place. "[A] transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." 11 U.S.C. § 96(a)(2). The trustee argues that the pledge agreement was never perfected before the bankruptcy petition was filed because it failed to comply with Puerto Rican law, 31 L.P.R.A. § 5023, which states that "A pledge shall not be effective against a third person, when evidence of its date is not shown by authentic documents." It is clear that in Puerto Rico an "authentic document is not a mere private writing. An authentic document is a legalized document, which is publicly attested, which is legally valid by itself . . . A document verified before a notary is an authentic document. . . ." *Ramos Mimoso v. Superior Court,* 93 P.R.R. 538, 540–41 (1966). The trustee concluded that since the pledge agreement was not notarized, it was never properly perfected and the date of the transfer may be deemed by law, although not in fact, to have occurred within the four months prior to bankruptcy.

Appellant challenges this thesis on several grounds. First, he maintains that under the Uniform Negotiable Instrument Act of Puerto Rico the promissory notes were legally negotiated to Pueblo by endorsement and delivery and that such negotiation conclusively determines Pueblo's right to the notes at the time of the negotiation. Even assuming arguendo that the notes were legally negotiated, we cannot accept this argument. It may well be that the transfer of a negotiable note as collateral security, if properly endorsed and delivered, gives the transferee the rights of a holder for value against other parties to the instrument, *see Sorrentini & Cia v. Mendez,* 76 P.R.R. 646 (1954). However, that is not sufficient for the purposes of the Bankruptcy Act. ". . . [A] creditor is not deemed to be 'secured' merely because he has a lien which is good as between the

parties; his security must also constitute a lien as to third parties", *Dean v. Planters National Bank of Hughes,* 176 F.Supp. 909 (E.D.Ark.1959). In *Corn Exchange Bank v. Klauder,* 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1942), although an assignment of accounts receivable was clearly binding between the assignor and the assignee, the assignees failed to perfect the transfer under local law by giving notice of the assignment to the debtors whose obligations had been taken. As a result of this failure the transfer was held to be a voidable preference. Similarly, in *England v. Feist,* 141 F.Supp. 824 (N.D.Cal.1956), the secured party was given endorsed certificates of ownership of the vehicles in which he had chattel mortgages by the debtor. However, he failed to perfect the transfer in accordance with local law against the claims of third parties, and his interest was subordinated to that of the bankruptcy trustee.

Thus for appellant to prevail in this action it must establish that the endorsement and delivery of the notes to it perfects its interest in them against third parties. The only support appellant presents for this conclusion is appellant's own belief that its interest should be considered perfected. We are aware that there are jurisdictions in which the facts of the transaction in this case would be sufficient to perfect appellant's security interest, *see* § 9–304 of the Uniform Commercial Code. However, we know of no jurisdiction that holds that the fulfillment of negotiable instrument requirements in and of itself perfects a security interest regardless of the law of secured transactions in that locality.

It is true that on rare occasion some courts have construed perfection requirements leniently. In *Copeland v. Stewart,* 52 Cal.App.3d 217, 124 Cal.Rptr. 860 (1975), a divided court held a note pledged as collateral to be perfected against third parties, despite the fact that technically the state's perfection requirement of delivery was not met, because the endorsement of the note and notice of its assignment to the makers was considered a "constructive" delivery. It should be emphasized, however, that the

California court's decision was not based on the fact that the note had been negotiated under the law of negotiable instruments, but on its independent determination that the perfection requirements of California law had been complied with by implication.

Looking to the law of Puerto Rico on this issue, there does not appear to be on the face of the statute any exception for negotiable instruments to the mandate of 31 L.P.R.A. § 5023 that pledges not evidenced by authentic documents are ineffective against third parties. *Acevedo v. Treasurer,* 52 P.R.R. 446 (1938) makes it clear that negotiable promissory notes can be pledged and are subject to the pledge provisions of the Civil Code in general although § 5023 is not specifically discussed. It is true that in *Trueba v. Zalduondo,* 34 P.R.R. 713 (1925), a pledge of shares of stock was held not to be subject to § 5023 if transferred in compliance with the requirements of 14 L.P.R.A. § 1509. However, that decision was based on the fact that stock so transferred would be authenticated by the public and formal records of the corporation as a transfer of a security interest. There is no such comparable authentication of the pledging of negotiable instruments. Indeed, the court in *Trueba v. Zalduondo, supra,* pointedly explained that § 1766 of the Civil Code, the precursor of § 5023, was intended to be a "rigid rule . . . to render impossible, if followed, a collusion between a supposed or true debtor and his real or feigned creditor for the purpose of injuring a third party." *Id.* at 716. The *Ramos Mimoso* case, *supra,* also suggests that the authentic document requirement is intended to be a formal and absolute rule. Given this statutory language and case law, we have no basis for reversing the holding of the lower courts that the pledged notes were not perfected.

Appellant next argues that even if the transfer of the notes was not fully perfected, the Bankruptcy Act requires only that they be "so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings could become superior to the rights of the transferee". *See In re King-Porter Co.,* 446 F.2d 722 (5th Cir. 1971). Since the notes were endorsed payable to its order and delivered long before the four month preference period began, appellant contends that no one could have reached them through a suit against the pledgor at that time. Thus the date of transfer for bankruptcy purposes should be deemed to have taken place at the date of the endorsement and delivery.

We cannot agree with this analysis. It is clear that even in a perfected pledge agreement in Puerto Rico, the pledgor retains the ownership rights in the pledged property. In *Hull-Dobbs Co. v. Superior Court; Vega, Int.,* 81 P.R.R. 214 (1959), the court described its "traditional conception of the nature of the contract of pledge and mortgage, that is, that fundamentally, they are but accessory contracts where a lien is created on certain property for the security and guarantee of one's own or another's obligation, without conveying to the creditor any dominion title therein." *Id.* at 226. 31 L.P.R.A. § 5027 confirms this conclusion in stating, "As long as the thing given in pledge is not taken by eminent domain, the debtor continues to be the owner thereof". Thus when property is pledged in Puerto Rico the pledgor remains the owner of the property and the pledgee receives a lien on the property for the value of the debt. In that context what 31 L.P.R.A. § 5023 clearly indicates is that the pledgee's lien is not superior to liens of third parties unless the pledge was properly authenticated.

Appellant has failed to produce any authority for its contention that pledged negotiable notes are a form of property owned by the pledgor which cannot be reached by third parties bringing suit against the pledgor. The fact that the notes were endorsed to the order of appellant is not critical. Whenever property becomes collateral for a debt, the secured party attempts to obtain all the authority necessary to enforce his rights to the collateral in the event of default without having to obtain further action by the debtor. If technical transfers of title and endorsements were sufficient by themselves to pro-

tect the secured party's interest in the collateral from third parties, the laws requiring recording or other forms of perfecting the security transaction would be meaningless. Property would become perfected simply by turning over the proper papers and endorsements in secret. We have already indicated that this is not the case. *See Corn Exchange Bank v. Klauder, supra,* and *England v. Feist, supra.*

According to Puerto Rican law the bankrupt in the present case owned the notes at issue during the term of the pledge agreement. Appellant's interest was only a lien and one that was not effective against third parties.[2] Promissory notes, negotiable instruments, and other commercial paper are subject to attachment and/or garnishment in other jurisdictions, *see Hecht v. Smith,* 183 Cal.App.2d 723, 7 Cal.Rptr. 209 (1960); *Copeland v. Stewart,* 52 Cal.App.3d 217, 124 Cal.Rptr. 860 (1975); *Grouse Creek Ranches v. Budget Financial Corp.,* 87 Nev. 463, 488 P.2d 917 (1971). In *Ramos Mimoso v. Superior Court, supra,* the debtor's pledged but unperfected bank deposit was held to be subject to garnishment. We see no basis for distinguishing the notes in this case from the bank deposits pledged and garnished in the *Ramos Mimoso* case.

Appellant next contends that it would be inequitable to apply the bankruptcy provisions so harshly against its interests since § 60 was designed to protect creditors from secret liens and there were none in this case. At all times appellant claims to have acted in good faith and it points out with particular emphasis that it notified the agent of the bankrupt's other creditors of the pledge transaction. Unfortunately, the law of commercial transactions and the Bankruptcy Act represent formal systems which may not be swayed by the equities of particular cases.[3] Failure to properly notarize a document has been held to render an otherwise valid recording of collateral a nullity. *In the Matter of Clifford,* 566 F.2d 1023 (5th Cir. 1978). Unsuccessful good faith attempts to meet the perfection requirements of pledged property have not been given favorable treatment either in Puerto Rico, *see Ramos Mimoso v. Superior Court, supra,* or elsewhere. *See Pittman v. Union Planters National Bank and Trust Co.,* 118 F.2d 211 (6th Cir. 1941); *In re Colonial Distributing Co.,* 293 F.Supp. 1235 (D.S.C.1968). *But see Copeland v. Stewart, supra.* Nor has the knowledge of creditors excused failure to perfect a security interest, *see Matter of E. A. Fretz Co., Inc.,* 565 F.2d 366 (5th Cir. 1978). While the result may, as the Court said in *Corn Exchange Bank, supra,* 318 U.S. at 441, 63 S.Ct. 679, make "hard law" in "isolated" cases, the alternative would be the disappearance of clear and automatic tests for validity and the substitution of endless evidence taking to determine the extent and significance of any secrecy in fact.

Appellant's final point is that whatever the law regarding pledge agreements might be, the pledge here had expired sev-

**2.** Even if endorsement and delivery of the notes were sufficient to protect the transfer from legal or equitable proceedings on a simple contract, appellant's failure to utilize the available means of perfecting the pledge would seem to make it vulnerable to § 60(a)(6) of the Bankruptcy Act, 11 U.S.C. § 96(a)(6), which limits the validity of equitable liens against the trustee. We are not certain that unperfected collateral of negotiated instruments constitute no more than equitable liens in Puerto Rico, although other courts have characterized unperfected pledges in general as equitable liens. *See Taplinger v. Northwestern National Bank,* 101 F.2d 274 (3d Cir. 1939). However, we note that the clear focus of this provision is to consider as unperfected security interest transactions which ignore local requirements as to the creation of valid interests against third parties, *see Republic National Bank of Dallas v. Vial,* 232 F.2d 785, 789 (5th Cir. 1956), and consequently to postpone the dates of the transfer of such interests to within the four month preference period.

**3.** The Supreme Court stated as much explicitly in *Corn Exchange Bank v. Klauder, supra,* 318 U.S. at 441, 63 S.Ct. at 684, "That the assignments in this case were made with the knowledge and acquiescence of many creditors does not cure the failure to meet the requirements of notice laid down by the applicable state law. Neither the words nor the policy of § 60(a) afford any warrant for creating exceptions to fit isolated hard cases."

eral days before the petition for bankruptcy was filed. Therefore, the pledge is of no legal consequence. We find this reasoning to be unsound. We would agree that with the expiration of the pledge agreement, if there was any of the underlying debt left unpaid, complete ownership of the notes would transfer to appellant; and at that time, the notes would be perfected so that they were beyond the reach of the bankrupt's creditors. However, that date of expiration and transfer was clearly within the four month preference period. Therefore, complete transfer of the notes at the expiration of the pledge would still result in the notes being a preferential transfer.

However, this line of argument raises a different problem apparently ignored by counsel and the lower court. The notes were a special form of collateral. The pledge agreement provided that "Debtors agree in that payments to be made on account of principal and interest on the Notes shall be made directly to Creditor to be credited to the Debt and its interest", and that "In the event of payment of the total Debt and its interests before the Notes become due and payable this contract shall expire and Creditor obliges itself to endorse and return the Notes, *for its value as of that date,* to the order of Debtors." [Emphasis added.]

 It thus appears that the notes were collateral of declining value, that payments from their makers were intended to reduce the debt of the bankrupt, and that the bankrupt's ownership interest in the notes as pledgor was only in the remaining value of the instrument, not in the money paid pursuant to the notes to reduce its debt to appellant. Whatever payments were made by the makers of the notes to appellant would seem to be full, clear and present transfers, not pledged security, and

were thus beyond the reach of a suit on a simple contract by bankrupt's creditors against bankrupt. While the notes at their value at any point in time remained unperfected, the payments made pursuant to them were direct payments of the bankrupt's debt, and as such were as perfected as any other cash payment would be. Payments on an underlying debt are not preferences even if made under an unperfected security agreement unless they are made within four months before the petition of bankruptcy is filed.[4] Also in the case of collateral of declining value, since the date of the transfer must be postponed to the time of perfection from the time of the actual transfer in fact for the purpose of determining whether a preference exists, we see no reason not to use the same date of transfer recognized by the Bankruptcy Act to determine the value of the collateral if a preference is held to exist. Therefore, we hold that payments made pursuant to the notes before the four month preference period began should not be considered preferential, but that any such payments made during the four month period prior to bankruptcy and the value of the notes at the time of their transfer to appellant after the expiration of the pledge agreement were preferential transfers and must be paid over to the trustee.

*The judgment is affirmed except as to payments made on the notes to appellant prior to the date on which the four month preference period commenced; the case is remanded to the district court to determine the amount so paid, which shall be awarded appellant.*

4. In *Republic National Bank of Dallas v. Vial,* 232 F.2d 785 (5th Cir. 1956), the bankrupt over a year prior to bankruptcy assigned various present and future accounts receivable to a bank as collateral for loans extended to it, and the bank failed to properly perfect the assignments. Collections from the accounts were exclusively used to pay off the indebtedness of the bankrupt. The court found that collections on the accounts receivable by the bank *after* May 29, the date the four month preference period began, were voidable preferences since without a perfected security agreement, "The relationship between the parties was simply that of debtor and creditor and the collections after May 29 can be characterized only as payments on account of an antecedent debt." *Id.* at 789.