PER CURIAM.
 

 The dispute in this case arose in the context of certain commercial transactions between United Beef Packers (UBP), a meat wholesaler, and Santos & Nieves, Inc. (S & N), a food retailer. During 1980, S & N executed two bearer mortgage notes in order to collateralize monies owed by its affiliate to UBP for goods previously purchased on credit.
 
 [1]
 
 The two notes in question are described as follows: a) a mortgage note payable to the bearer on demand in the amount of $75,000, executed by S & N on March 7,1980, secured by a mortgage described in the body of the note and created by Deed No. 43; and (b) a mortgage note payable to the bearer on demand in the amount of $100,000, executed by S & N on August 19,1980, secured by a mortgage described in the body of the note and created by Deed No. 123. Both notes were notarized on the date of execution; however, the record indicates that the parties did not conclusively establish the dates on which the notes were physically transfer
 
 *59
 
 red to UBP. The $75,000 mortgage was recorded in the Registry of Deeds on May 22, 1980 and the $100,000 mortgage was recorded on August 20, 1980. On May 15, 1981, Santos and Nieves filed for relief under Chapter 11 of the Bankruptcy Code, subsequently converting the case to Chapter 7, at which time a trustee was appointed. At the time that S & N filed bankruptcy, the balance of the obligation owed to UBP was $153,299.86.
 
 [2]
 
 UBP filed a proof of claim as a secured creditor for $153,-299.86, the security being the two mortgages previously mentioned. The trustee for the debtor filed a complaint against UBP, claiming that the transfer of mortgage notes by S & N to UBP was not perfected under the local pledge law set forth in 31 L.P.R.A. § 5023,
 
 [3]
 
 thereby making the transaction a voidable transfer under 11 U.S.C. § 544 and § 547. On February 27, 1984, the Bankruptcy Court issued an order granting summary judgment on behalf of the plaintiff, basing its decision on the fact that the transfer of the notes from S & N to UBP constituted an unperfected pledge under the pledge authentication requirement of Puerto Rico law. The District Court reversed, finding that the transfer was valid and unavoidable under the terms of 11 U.S.C. § 547.
 

 The District Court concluded that the law does not require bearer mortgage notes to be transferred pursuant to a pledge agreement in order for their transfer to be effective against third parties. This being the case, the court found that mere delivery of the bearer notes was sufficient to establish the validity of the transaction. The court further concluded that since the mortgages securing the bearer notes were recorded before the commencement of the 90-day preference period dictated by 11 U.S.C. § 547, these mortgages constituted perfected security interests which were not avoidable by the trustee in bankruptcy.
 

 We cannot agree with the District Court’s determination that 31 L.P.R.A. § 5023 does not apply to the transfer of mortgage promissory notes which occurred in this case. In
 
 Matter of Supermercados San Juan, Inc.,
 
 575 F.2d 8 (1st Cir.1978), we noted that
 
 Acevedo v. Treasurer,
 
 52 P.R.R. 446 (1938), “makes it clear that negotiable promissory notes can be pledged and are subject to the pledge provisions of the Civil Code ...”
 
 Supermercados San Juan, Inc.,
 
 575 F.2d at 12. Although we also noted that in
 
 Trueba v. Zalduondo,
 
 34 P.R.R. 713 (1925), an exception to section 5023 had been made where there was a pledge of shares of stock in compliance with the requirements of 14 L.P.R.A. § 1509, we have found no case which creates such an exception for pledged bearer mortgage notes. The record shows that the transfer of the notes in this case was intended to be a pledge; this being the case, pledge law applies. Having concluded that Puerto Rico’s pledge authentication requirement set forth in 31 L.P.R.A. § 5023 does apply to the instant case, we must find that the transfers between S & N and UBP did not satisfy that requirement, and are therefore avoidable by the trustee pursuant to 11 U.S.C. § 544(a).
 

 An effective analysis of this case requires that we classify the transaction between S & N and UBP not as a transfer of an interest in real property, but instead as a transfer of personal property. In
 
 Davila v. Registrar,
 
 the court stated that “[a]n obligation involving the recovery of money, such as a promissory note transferable by indorsement or by mere delivery of the note is by provision of law personal property, even though it may be secured by a mortgage on real property.” 59 P.R.R. 129,132 (1971); 31 L.P.R.A. § 1064.
 
 [4]
 
 Since
 
 *60
 
 the notes transferred between S & N and UBP represented an obligation to pay money which was guaranteed by a mortgage, then according to Puerto Rico law they are correctly defined as personal property.
 

 The transfer of the personal property in this case was unquestionably a pledge under Puerto Rican law. The record shows that the two notes in question were delivered in order to secure the fulfillment of S & N’s obligation to UBP. It is an essential requirement of a pledge that it be “constituted to secure the fulfillment of principal obligation.” 31 L.P.R.A. § 5001. An additional requirement of a pledge is that it “be placed in the possession of the creditor, or of a third person by common consent.”
 
 Id.
 
 The parties do not dispute the fact that UBP did have possession of both notes at the time S & N filed for bankruptcy.
 

 Although the appellee has argued that the transfer of bearer notes should be controlled by the law of negotiable instruments, we do not find this argument convincing. In
 
 Supermercados San Juan, Inc.,
 
 this court disposed of the negotiable instruments argument, stating that
 

 when property is pledged in Puerto Rico, the pledgor remains the owner of the property and the pledgee receives a lien on the property for the value of the debt.... If technical transfers of title ... were sufficient by themselves to protect the secured party’s interest in the collateral from third parties, the laws requiring recording or other forms of perfecting the security transaction would be meaningless.
 

 575 F.2d 8, 12-13 (1st Cir.1978). We cannot allow the creditor in the instant case to reclassify the transfer of the notes as a simple negotiation, when the clear intention of the parties was to provide UBP with recourse to collateral should S & N become unable to pay its obligation in full.
 

 Having established the fact of the pledge, we must now determine whether the pledge complied with the requirements of local lav/. A pledge need not be in writing to be valid between the parties to the transaction.
 
 Ramos Mimoso v. Superior Court,
 
 93 P.R.R. 538, 541 (1966). For a pledge to be effective against third parties, however, evidence of its date must appear in an authentic document.
 
 Id.;
 
 31 L.P.R.A. § 5023. In this particular case, since there was no written pledge agreement, and delivery of the notes was the act which created the pledge, the date which logically must be authenticated is the date on which the bearer notes were transferred by S & N to UBP. The date of a pledge may be established by any document executed or subscribed before a notary public.
 
 Supermercados San Juan, Inc.,
 
 575 F.2d at 8. No document has been produced which confirms the date of the transfer; although the bearer notes themselves are dated and notarized, this fact alone does not establish the date of the pledge.
 

 It is indeed tempting to view the recordation of the mortgages collateraliz-ing the notes as satisfying the date authentication requirement of 31 L.P.R.A. § 5023. Nevertheless, the dates appearing in the Registry of Deeds tell us nothing about the transfer in this case; the recordation does not establish possession of the notes by the creditor. The one who recorded the mortgages could have been either the debtor or the creditor. The record does not reveal which was the case. It is entirely possible that a debtor would record mortgages on his property in bearer name in order to deter anxious creditors from demanding that property as collateral. In the same vein, once a mortgage is recorded, the debt- or could transfer the related bearer mortgage notes to a creditor at virtually any time.
 
 [5]
 
 Thus, without evidence of the date on which the bearer notes were delivered,
 
 *61
 
 we must find that the pledge of the notes remained unauthenticated.
 

 According to 11 U.S.C. § 544(a)(1), the trustee may assume the status of a hypothetical lien creditor as of the commencement of the bankruptcy case.
 
 [6]
 
 The trustee’s rights and powers in the role of lien creditor are to be determined by local law.
 
 Carina Mercury, Inc. v. Ingaravides,
 
 344 F.2d 397 (1st Cir.1965). The law in Puerto Rico is clear in its statement that unauthenticated pledges are not effective against third parties. 31 L.P.R.A. § 5023. We believe that the trustee, acting as a lien creditor, would fall into the category of a “third party” for purposes of § 5023. In
 
 Ramos Mimoso v. Superior Court,
 
 the court noted that “the plaintiff, attaching creditor, was not a party in the contract of pledge negotiated between his debtor ... and the [bank], and therefore he is a third party.” 93 P.R.R. 538, 544 (1966). Since the trustee was not a party to the original pledge agreement between S & N and UBP, he must qualify as a “third party” as described by
 
 Ramos Mimoso.
 
 Although an attaching creditor may not always be categorized as a third party, the cases where this has been true are distinguishable from both
 
 Ramos Mimoso
 
 and the instant case in that they do not deal with pledge law.
 
 E.g., Carina Mercury, Inc. v. Ingaravides,
 
 344 F.2d 397 (1st Cir. 1965),
 
 Commercial Credit Co. v. Soto,
 
 41 P.R.R. 406 (1950). An unauthenticated pledge agreement which is ineffective against third parties will necessarily be subordinate to the rights of the trustee, and may be avoided by the trustee pursuant to his powers under 11 U.S.C. § 544(a)(1).7
 

 The judgment of the district court is hereby reversed. The appellant has indicated in his brief that, pursuant to an agreement with the appellee, the properties which were encumbered by the bearer mortgage notes in question have been sold and the proceeds deposited in an interest-bearing account pending appeal. Since the appellee has not contested this fact, we hereby order that these funds, plus any interest accrued in the aforementioned account, be distributed to the trustee as part of the bankrupt’s estate.
 

 Reversed.
 

 [1]
 

 . Appellant's brief indicates that the goods were actually purchased on credit by an affiliate of S & N called Super Carnicería & Pescadería Ro-san, Inc., and that S & N gave the notes and mortgage to collateralize the obligation of its affiliate. We will henceforth refer to S & N as the debtor in this case.
 

 [2]
 

 .The District Court stated that sometime around December, 1980, UBP stopped selling merchandise to the debtor and requested partial payments to reduce the debt. When it became apparent that the debtor would be unable to repay the balance of the obligation, UBP filed a complaint to collect the money on May 12,1981. Three days later, S & N filed bankruptcy, thereby imposing an automatic stay on all suits.
 

 [3]
 

 . 31 L.P.R.A. § 5023 states that: “[A] pledge shall not be effective against a third person, when evidence of its date is not shown by authentic documents."
 

 [4]
 

 . 31 L.P.R.A. § 1064 states, in relevant part, that “[t]hings movable by disposition of the law are such as obligations and actions, the object of which is to recover money due or movables by
 
 *60
 
 their nature, although such obligations are accompanied by a mortgage ...”
 

 [5]
 

 . In
 
 Ramos Mimoso v. Superior Court,
 
 93 P.R.R. 538 (1966), the court, in referring to a number of well-known authorities on the subject, stated that
 

 [c]ommentators agree on that, as we said, the requirement that the date of the pledge of contract be set forth by authentic document or public instrument is based on the purpose of preventing the simulation of secured credits in prejudice and fraud of third parties.
 

 Id.
 
 at 542.
 

 [6]
 

 . 11 U.S.C. § 544(a)(1) states that the trustee may avoid a transfer "that is voidable by — (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists....”