**UNITED STATES of America**

**v.**

**Miguel A. SERRANO, d/b/a Ponce Developers, Inc., Juan Luis Boscio, William Stamps.**

**Crim. No. 85–0024 GG.**

United States District Court, D. Puerto Rico.

Jan. 27, 1988.

Daniel F. Lopez Romo, U.S. Atty., Lydia Lizarribar, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Blas C. Herrero, Jr., Hato Rey, P.R., for defendant Miguel A. Serrano.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is one more chapter of defendant's long saga. Considering the record, what has been stated elsewhere is also applicable to defendant. His intelligence and financial wizardry are only surpassed by his penchant to get entangled with the law. *Cf. United States v. Montemayor*, 666 F.2d 235, 236 (5th Cir.1982).

### *Procedural Background*

A prolonged and far reaching investigation by federal investigative agencies produced three different indictments against defendant, Miguel A. Serrano (Serrano). Since the same grand jury considered the evidence in the first two cases, and a different grand jury considered the third one, the date in which the indictments were returned becomes important. The first indictment pertains to Cr. 84–0381(JP) and was returned on November 28, 1984. In that case, Serrano pled guilty to three counts involving violations to 18 U.S.C. § 1006 (false entries in documents of federal credit institutions), § 656 (misapplication of bank funds), and § 1343 (wire fraud). After having been sentenced, defendant sought to withdraw his guilty plea, but the request was denied.

The second indictment, Cr. 85–0024(GG), the instant case, was returned on February 1, 1985. Here, Serrano was charged along with others in a four-count indictment for violation of Title 18 U.S.C. §§ 2, 1341 and 1343. Pursuant to the indictment, beginning in May 1982 through February 1983, Serrano along with two other co-defendants devised and carried out a scheme to defraud the Home Federal Savings and Loan Association of Puerto Rico and to obtain Title I notes and FHA mortgages from it with a value of approximately $1.7 million (the collateral), and to obtain a million dollars from the proceeds of a securities repurchase agreement (Repo #196 loan), which triggered a series of transactions by which the scheme was accomplished. As a result of the above, the Home Federal Savings and Loan Association of Puerto Rico collapsed. After a two-week jury trial, defendant was found guilty as charged.

The third indictment relates to Cr. 85–0449(CC) and was returned on October 31, 1985 by a different grand jury.[1] That three count indictment charged Serrano only in the first count alleging conspiracy with two other co-defendants to obstruct commerce by extortion, in violation of Title 18 U.S.C. § 1951. There, defendant's pretrial motions were referred to Magistrate Jesús Antonio Castellanos who, after an extensive evidentiary hearing, found that the grand jury had been exposed to immunized information and that there was a lack of contemporaneous knowledge of the *Kastigar* problem (*Kastigar v. United*

---

1. The records of the court show that the grand jury which returned the indictments in Cr. 84–0381(JP) and Cr. 85–0024(GG) was empanelled on October 19, 1983 and its term expired on April 10, 1985. The foreman was Mr. José Mariani. However, the grand jury which returned the indictment in Cr. 85–0449(CC) began its term on December 3, 1984 and extended through November 1986. The latter grand jury was headed by Mr. Edwin Palovani although another juror signed the true bill. For the purposes of this opinion, we shall hereinafter referred to the "Mariani" or "Palovani" grand jury.

*States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)), as well as an absence of contemporaneous precautions against intentional or unintentional use of immunized material in furtherance of a federal investigation. He recommended that the indictment be dismissed, to which the judge agreed holding that the government failed to meet the required burden of legitimating all its evidence. However, the court made clear that its opinion and order dealt only with the indictment and prosecution against Serrano in case 85–0449(CC), not with case 84–0381(JP), or the instant case 85–0024(GG).

The post-trial motions filed in the case at bar requesting a new trial[2], dismissal of the indictment and the vacating of defendant's conviction were referred to Magistrate Justo Arenas. Defendant contends that the government, due to ignorance of its own guidelines, utilized his immunized testimony before the grand jury that returned the indictment against him. In opposition, the government asserts prior knowledge of all pertinent evidence and denies the possibility of any use, direct or indirect, of the immunized testimony or any information derived therefrom.

Now pending before us is an appeal by the government from the amended report issued by Magistrate Arenas recommending that the motion to dismiss the indictment be granted. After a *non-evidentiary hearing,* the magistrate found that some parts of Serrano's immunized testimony and/or the fruits thereof were used by the prosecution in its presentations to the grand jury during January 17 and February 1, 1985. He therefore recommended that the indictment be dismissed and the sentence vacated and set aside. The government appeals.

### Factual Background

From the evidence before us, it appears that with knowledge of an FBI investigation concerning many of his financial transactions and dealings while an officer of Shearson–American Express of Puerto Rico, and facing the imminence of an indictment in this court, Serrano testified under a grant of local immunity on September 25, 27 and 28, 1984 before a sub-committee of the House of Representatives of Puerto Rico that was conducting an investigation of government corruption.

Prior to Serrano's testimony before the legislative committee, the investigation that resulted in the instant case had been assigned by the FBI to special agent Harry García who had been conducting interviews as early as February 1984 in relation to an investigation known as "Shearson–American Express". The investigation dealt with the financial transactions involved in this case as well as in Criminal Cases 84–0381(JP) and 85–0449(CC). The first grand jury subpoenas were issued on March 16, 1984. As a result of the subpoenas issued, thousands of documents were obtained which became evidence in the instant case. The evidence included bank statements, cancelled checks, deposit slips, wire transfers, checks, money orders, signature cards, correspondence and other records related mainly to the Repo # 196 transaction. Agent García also interviewed numerous witnesses and prepared extensive reports of these interviews—which had been conducted prior to September 1984—and which exhaustively detailed the transactions between Serrano and Home Federal Savings, including Repo # 196. The witnesses interviewed also provided affidavits of the aforementioned transactions, as well as to the facts related to transactions between Serrano and the Municipality of Ponce.

Likewise, by March 1984 agent García had been provided with a copy of Serrano's deposition taken by the attorneys for Shearson American–Express on October 21, 1983. In his statements, which were under oath and voluntarily made, Serrano explained thoroughly the Repo # 196 transaction. Furthermore, in May 1984, four months before Serrano testified under a

---

**2.** Since it appears from Serrano's motion that he joined co-defendant Boscio in his motion for new trial filed on November 17, 1986, his request must also be denied for the reasons stated in our Order dated November 12, 1987.

grant of immunity, his attorney at that time, Mr. Antonio Amadeo Murga, requested an interview with the Federal Bureau of Investigations (FBI). The request was granted and the interview was scheduled for May 10, 1984. On that date, Serrano, accompanied by counsel, arrived at the FBI offices in Hato Rey, Puerto Rico and expressed his willingness to be interviewed in relation to the transactions under investigation. The report prepared by agents Jane Erickson and García, who conducted the interview, reveals that one of the transactions for which Serrano was indicted in this case—Repo # 196—was extensively discussed.

In September 1984 when Serrano testified before the legislative committee under a state grant of immunity, his testimony was carried on television and agent García watched and videotaped Serrano's entire testimony and later reviewed the tapes and transcripts on various occasions. Upon agent García's instructions, a transcript of Serrano's immunized testimony was hand-delivered to AUSA Lydia Lizarribar who had the primary responsibility for prosecuting Serrano.

On February 1, 1985, the Mariani grand jury returned the present indictment. Serrano thereafter moved to dismiss the indictment contending, as he again does now, that it was based upon evidence and information derived from his immunized testimony. An evidentiary hearing was held on August 24, 1985 before the undersigned. At said hearing, agent García testified that the case was complete before Serrano testified before the legislature, and that the evidence presented to the grand jury was his own testimony concerning the contents of reports of witness interviews by the FBI during investigations conducted prior to September 1984. He testified that he did not present any evidence to the grand jury derived from his reading of Serrano's immunized testimony. No improperly derived information—i.e. no communication or link between his testimony and the present criminal case suggestive of taint—was brought to the attention of the court during the hearing. The grand jury minutes related to this proceeding were provided to

the court for an *in camera* inspection. After carefully examining them, and considering the evidence presented and arguments adduced at the hearing, the court denied the dismissal finding that the indictment returned by the grand jury was not based on evidence derived from Serrano's immunized testimony or from its fruits.

After a jury trial, Serrano renewed his contention that the government had violated his privilege against self-incrimination. In his post-trial motion, Serrano alleges that agent García made mention of defendant's immunized testimony before the grand jury in order to obtain an indictment, and that the prosecutor used such testimony directly and indirectly in focusing the investigation on the defendant, in deciding to initiate the prosecution, and in planning the trial strategy—a clear violation of *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

### Discussion

Grants of use and derivative use immunity prohibit the use of compelled testimony and its fruits in later criminal proceedings. *Kastigar, supra,* 406 U.S. at 443, 92 S.Ct. at 1655. In *Kastigar,* the Supreme Court held that the scope of such immunity is coextensive with the privilege against self-incrimination afforded by the fifth amendment. *Id.* at 459, 92 S.Ct. at 1664. Nevertheless, a state grant of immunity does not automatically preclude the federal authorities from initiating prosecution on the same subject matter. *Murphy, supra,* 378 U.S. at 79, n. 18, 84 S.Ct. at 1609 n. 18. As stated in *Murphy,* "Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they have an independent, legitimate source for the disputed evidence." 378 U.S. at 79, n. 18, 84 S.Ct. at 1609 n. 18. This burden of proof is not limited to negation of taint, but rather imposes on the prosecution the affirmative duty to prove that the evidence presented to the grand jury and the evidence utilized

at trial was derived from legitimate independent sources. *Kastigar, supra; United States v. Hampton,* 775 F.2d 1479, 1485 (11th Cir.1985). Although the government's burden to disprove taint and to demonstrate independent sources for its case is a "heavy" one, in practical terms, *Kastigar, supra,* 406 U.S. at 461–62, 92 S.Ct. at 1665, subsequent cases have made it clear that in legal terms, the government need only demonstrate by a preponderance of the evidence an independent source for all evidence introduced. *United States v. Byrd,* 765 F.2d 1524 (11th Cir.1985); *United States v. Seiffert,* 501 F.2d 974, 982 (5th Cir.1974) ("Seiffert II"), cited with approval in *United States v. Gregory,* 730 F.2d 692, 698 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). Thus, the government is only required to show that the evidence more likely than not was derived independently of Serrano's testimony. Of course, the government's representations that it did not make any use of Serrano's testimony, standing alone, are generally insufficient to meet its burden, even if made in good faith. *Hampton, supra,* 775 F.2d at 1485; *Byrd, supra,* 765 F.2d at 1529.

■ Specifically, Serrano urges the court to dismiss the indictment and vacate his conviction based on the fact that agent García, who presented this case to the grand jury, recorded Serrano's immunized testimony, and had unobstructed access to the tapes and transcripts of such testimony, and that the lead prosecutor had a copy of the transcript.

Regarding this argument, we note that *Kastigar* made no mention of any duty on the government to erect an impenetrable barrier between the prosecutors who read or hear the immunized testimony and those who decide to indict, despite the potential problem involved. *Byrd, supra,* 765 F.2d at 1530. So long as all the evidence presented to the grand jury is derived from legitimate sources independent of the defendant's immunized testimony, and the grand jury finds that this independent evidence is sufficient, there is no violation of defendant's privilege against self-incrimina-

tion. At a minimum, the existence of independent evidence sufficient to establish probable cause to indict raises a presumption that the decision to indict was not tainted.

■ Nonetheless, we adopt the view of the Court of Appeals for the Eleventh Circuit as propounded in *Byrd, supra,* 765 F.2d at 1531, "that the privilege against self-incrimination is concerned with direct and indirect evidentiary uses of compelled testimony, and not with the exercise of prosecutorial discretion."

■ Clearly, the government could meet its burden by demonstrating that everything revealed in Serrano's testimony was previously known to the government through independent sources or that any new information obtained directly or indirectly from Serrano's testimony did not become part of the evidence or facilitate the discovery or introduction of other evidence. *Byrd, supra,* 765 F.2d at 1531. Addressing this same matter, the court in *United States v. Catalano,* 491 F.2d 268, 272 (2d Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974), held that evidence to the effect that the prosecutor had prior knowledge of substantially all the information covered in the defendant's immunized testimony was sufficient to foreclose the possibility that he made any use, direct or indirect, of the compelled testimony and any information derived therefrom.

■ The government contends that the evidence relied upon was obtained prior to the immunized testimony. In support of this argument, the government has submitted the complete prosecutorial report, numerous reports of witness interviews, a copy of all grand jury subpoenas, as well as the transcript of a deposition and of the relevant grand jury proceedings—all of which contain information obtained prior to Serrano's immunized testimony, which we find was sufficient to establish probable cause to indict and ultimately to obtain defendant's conviction. Since the hearing conducted by the magistrate was *non-evidentiary,* this evidence, with the exception of the grand jury transcripts, was never considered by him. It was only made part

of the record when the government filed its opposition to the magistrate's report. This supplemental evidence—which was not available to the magistrate—places us in a coign of vantage to precisely adjudicate the pending issues.

Upon careful examination of the whole record, including the documents submitted by the government, which amount to approximately one thousand pages, it is evident that each step of the investigative chain by which the evidence presented was obtained, was fully documented and accounted for. Irrespective of whether the prosecutor who participated in the decision to indict actually read or heard the immunized testimony, the government has met its burden by showing that the information revealed in Serrano's immunized testimony was previously known to the government through independent sources.

Defendant also argues that certain references to his immunized testimony were made by agent García before the grand jury as to matters later segregated as Criminal Cases 85–0024(GG) and 85–0449(CC). This, he argues, tainted both indictments.

We note that the magistrate in addressing this matter makes constant reference to the testimony adduced by agent García during a hearing on a similar motion before Judge Cerezo. The magistrate points to that part of agent García's testimony where he states that before viewing and hearing Serrano's immunized testimony he had only a general idea of the case, specifically referring to Cr. 85–0449(CC). However, the magistrate completely overlooked the relevant part of García's testimony where he asserts that approximately one week *before* Serrano's immunized testimony, he had enough evidence for Criminal Case 84–0381(JP) and 85–0024(GG), the present case. (See transcript of hearing of August 12, 1986, at pp. 36, 55 in Cr. 85–0449(CC)).

Furthermore, agent García admitted at the hearing before Judge Cerezo that he viewed the entire videotaped testimony of Serrano three or four times in an effort to corroborate what was already in his posses-

sion. However, García stated that "the only thing that came out when he (Serrano) testified was the distribution of the $660,000 which turned out to be the same monies mentioned here [in Cr. 85–0449] ...". (*See* Opinion and Order of Judge Carmen Consuelo Cerezo, dated April 8, 1987 in Cr. 85–0449(CC) at p. 8, citing from the transcript of August 18, 1986, p. 70). Nothing came out in reference to, or affecting the instant case. Likewise, both the magistrate and the defendant rely heavily on García's statement that he acquired knowledge of everything related to the Florida Festival [a transaction mentioned in Cr. 85–0449(CC)] from Serrano's testimony, prior to his appearance before the Palovani grand jury on October 31, 1985. (*Id.* at p. 9, transcript of hearing before Judge Cerezo of August 11, 1986, p. 118). Nevertheless, this reliance is misplaced since García's reference to the Florida Festival directly derived from Serrano's immunized testimony, was related to Cr. 85–0449(CC) and not to the instant case and was relayed to a different grand jury by agent García approximately six months after the present indictment was returned. By no stretch of the imagination can we conceive how this evidence could have had any bearing on the grand jury's decision to indict Serrano or on his subsequent conviction.

The magistrate also found that the mention of Serrano's immunized testimony during agent García's presentation before the [Mariani] grand jury on January 17, 1985, pp. 19–20, was serious and blatant enough to compel dismissal of the indictment and the conviction upon which it was based.

■ At the outset, we note that an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence, or on information obtained in violation of a defendant's privilege against self-incrimination. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *Lawn v. United States*, 355 U.S. 339, 349–50, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958); *United States v. Beery*, 678 F.2d 856, 859 (10th Cir.1982), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142,

85 L.Ed.2d 499 (1985). On the other hand, when such a violation occurs in the grand jury proceeding itself, the violation of the constitutional right or privilege is a proper basis for dismissal of an indictment. *Id.* at 860. However, a dismissal or new trial might not be required if use or derivative use of the prohibited evidence (immunized testimony) is found to be harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Gregory, supra,* 730 F.2d at 698; *Beery, supra,* 678 F.2d at 860.

■ When agent García testified before the Mariani grand jury on January 17, 1985, near the end of his presentation he made a passing reference to the fact that Serrano had testified before the state legislature under a grant of local immunity (Grand Jury Transcript of January 17, 1985 at p. 19). However, nothing was divulged before the grand jury regarding the substance of Serrano's immunized testimony bearing on the crime for which he was indicted and convicted in this case. While this statement by the case agent before the grand jury was improper, we find that it was nevertheless harmless, beyond a reasonable doubt, in light of the more than adequate untainted testimonial as well as documentary evidence adduced to support the indictment and subsequent conviction. *United States v. Rogers,* 722 F.2d 557, 560 (9th Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); *United States v. Shelton,* 669 F.2d 446, 464 (7th Cir.), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982).

■ The magistrate also highlights three direct references in agent García's October 31, 1985 grand jury presentation, to the fact that Serrano had testified under a grant of local immunity. As noted, the indictment in this case was handed down on February 1, 1985, so we fail to perceive what effect or possible relevance agent García's October 31 testimony before the Palovani grand jury could have had on an indictment which had already been returned eight months earlier by a different grand jury.

■ Finally, we address defendant's argument that the government's failure to follow its own guidelines mandates the dismissal of the indictment and the setting aside of his conviction.

The Department of Justice provides a detailed set of guidelines for its attorneys to follow whenever a defendant, actual or potential, is to testify under a grant of immunity as to matters related to a pending criminal investigation or a case being prosecuted. The purpose of these guidelines is to facilitate the government's task of establishing the purity of its case in the event of future prosecution of the witness. The government's failure to follow the guidelines does not create any substantial rights for the defendant; it only makes the government's burden of affirmatively proving independent sources for its evidence a more heavy one.

We must emphasize that our holding today should not be construed as a seal of approval or as an endorsement of the procedures utilized by the prosecution in this case. Prosecuting officials and their agents—who are aware of the immunity problem—should follow reliable procedures for segregating the immunized testimony and its fruits from officials pursuing any subsequent investigations. The guidelines provided by the Department of Justice embody the best practice to properly handle situations involving the prosecution of a defendant who has testified under a grant of immunity. The ignorance of these guidelines by the United States Attorney and his assistants, as well as by the F.B.I., is deplorable. Nevertheless, the failure to follow these guidelines does not mandate dismissal where, as here, defendant's privilege against self-incrimination was not violated. We cannot, as defendant pretends, adopt a *per se* rule to the effect that once the guidelines are not followed, dismissal is mandated without further considering if defendant suffered any prejudice.

After considering all the evidence we can state that defendant's fate was sealed well before he testified under a grant of immu-

nity. To disprove taint and establish its independent sources, the government offered testimony regarding the sources of each count of the indictment and extensive documentary evidence indicating that the government's case was largely established before Serrano testified. When this matter was first raised before trial, after hearing the testimony of the case agent and the prosecutor, and after an *in camera* inspection of the grand jury minutes, we found that there was no evidence that the indictment had been tainted. Our conclusion that there was no taint is reinforced by our observation of the testimony and documentary evidence adduced at trial and a review of the prosecutor's investigative report, the reports of government witness interviews, the affidavits and defendant's deposition, as well as his immunized testimony. Clearly, there is nothing to suggest that the government used, or even needed Serrano's testimony to help make out its case.

In summary, the evidence as a whole shows that agent García's references to immunized testimony before the grand jury were made after the indictment in the present case had been returned and before a different grand jury. They were relevant to Cr. 85–0449(CC), and formed the basis for the dismissal of the indictment against the defendant in that case, but not in the present one.

Wherefore, in view of the foregoing, the Magistrate's Report and Recommendation dated July 21, 1987 is rejected and defendant's motion for dismissal of the indictment and for setting aside the sentence imposed, is hereby DENIED.

SO ORDERED.