UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1651
FEDERAL DEPOSIT INSURANCE CORPORATION,

Cross-Plaintiff, Appellee,
v.

SHEARSON-AMERICAN EXPRESS, INC., ET AL.,
Cross-Defendants.

BANCO COOPERATIVO DE PUERTO RICO,

Intervenor, Appellant.

No. 92-1652
FEDERAL DEPOSIT INSURANCE CORPORATION,

Cross-Plaintiff, Appellee,
v.

SHEARSON-AMERICAN EXPRESS, INC., ET AL.,
Cross-Defendants.

PRUDENTIAL BACHE SECURITIES, INC.,

Intervenor, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. District Judge]

Before
Stahl, Circuit Judge,

Campbell, Senior Circuit Judge,

and Skinner,* Senior District Judge.

Manuel Fernandez-Bared and Ramon Coto-Ojeda with whom Nestor M.

Mendez-Gomez and McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria

wereon brief forintervenor, appellant PrudentialBache Securities, Inc.

*Of the District of Massachusetts, sitting by designation.

Plinio Perez Marrero for intervenor, appellant Banco Cooperativo

De Puerto Rico.
Enrique Peral with whom Munoz Boneta Gonzalez Arbona Benitez &

Peral, Ann S. Duross, General Counsel, Colleen B. Bombardier, Senior

Counsel, Jaclyn C. Taner, Counsel, and Richard Schwartz were on brief

for cross-plaintiff, appellee.

June 24, 1993

CAMPBELL, Senior Circuit Judge. In these appeals,

two creditors challenge appellee's rights to the assets of

the mastermind of a multimillion dollar fraud, each creditor

claiming that it has a superior claim to the money.

Miguel Serrano Arreche ("Serrano"), a former Puerto

Rico stockbroker, was indicted and convicted in 1985 of wire

fraud, mail fraud, and other violations of federal criminal

statutes. Serrano's misdeeds have been extensively

chronicled elsewhere. See, e.g., United States v. Serrano,

870 F.2d 1, 3-5 (1st Cir. 1989).1 The primary victim of

Serrano's fraud was Home Federal Savings and Loan Association

("Home Federal"), a Puerto Rico bank which collapsed partly

from losses caused by Serrano. United States v. Serrano, 870

F.2d at 4. The Federal Savings and Loan Insurance

Corporation ("FSLIC") took control in 1985 and, thereafter,

the appellee Federal Deposit Insurance Corporation ("FDIC")

became Home Federal's successor in interest pursuant to the

Financial Institutions Recovery, Reform, and Enforcement Act

of 1989. See 12 U.S.C. 1821a et seq.

1. See also United States v. Tormos-Vega, 959 F.2d 1103 (1st

Cir.), cert. denied, 113 S. Ct. 191 (1992); FDIC v. CNA

Casualty of Puerto Rico, 786 F. Supp. 1082 (D.P.R. 1991);

United States v. Serrano, 680 F. Supp. 58 (D.P.R. 1988),

modified, 870 F.2d 1 (1st Cir. 1989); FSLIC v. Shearson-

American Express, Inc., 658 F. Supp. 1331 (D.P.R. 1987);

United States v. Tormos-Vega, 656 F. Supp. 1525 (D.P.R.

1987), aff'd, United States v. Boscio, 843 F.2d 1384 (1st

Cir.), cert. denied, 488 U.S. 848 (1988); United States v.

Serrano, 637 F. Supp. 12 (D.P.R. 1985); United States v.

Serrano, 622 F. Supp. 517 (D.P.R. 1985).

-3-

The present action was brought in 1984 in the

United States District Court for the District of Puerto Rico

by the Municipality of Ponce, against defendants that

included Home Federal, Serrano, Shearson Lehman Brothers,

Inc., and Shearson Lehman Brothers, Inc. (Puerto Rico)

(collectively "Shearson"). Home Federal filed cross-claims

against Serrano, Shearson, and others. Both the Municipality

of Ponce and Shearson settled and left the case. On October

16, 1989, the district court entered a default judgment for

the FDIC (now representing Home Federal) on its cross-claims

against Serrano, finding Serrano liable to the FDIC for

$44,265,241. Thereafter, on May 17, 1990, the FDIC secured

from the district court an order attaching Serrano's assets

to enforce the foregoing judgment.

This appeal stems from efforts by two other

creditors, appellants Prudential-Bache Securities, Inc.

("Prudential") and Banco Cooperativo ("Banco"), to intervene

in the same district court action after certain of Serrano's

assets were transferred to the district court pursuant to the

FDIC's attachment. Prudential and Banco asked the district

court to withdraw its order authorizing disbursement of

Serrano's funds to the FDIC, and are appealing from its

refusal to do so.

To understand the present dispute, it is necessary

to realize that in September 1987, Serrano had petitioned for

-4-

bankruptcy in the United States Bankruptcy Court for the

District of Puerto Rico, triggering the automatic stay of 11

U.S.C. 362. The FSLIC sought and received partial relief

from the stay on January 13, 1989, permitting the instant

action to continue in the district court until entry of

judgment. Serrano's only significant assets were 32,400

shares of Bayam n Federal Savings Bank stock, which at one

time had been held in a trading account at Prudential.2 By

order of the bankruptcy court, the stock was sold for

approximately $700,000 in April 1989 and the proceeds were

deposited with the bankruptcy court as property of the

estate. On November 17, 1988, Prudential filed its own claim

in the bankruptcy proceeding. On October 16, 1989, as we

have said, the district court entered a judgment for the FDIC

in its cross-claims against Serrano.

On May 16, 1990, the bankruptcy court issued an

order dismissing Serrano's bankruptcy case, but expressly

retaining jurisdiction to decide how to dispose of all funds

held for Serrano. The bankruptcy court gave all creditors,

which included Prudential, eleven days to express their

positions as to the disposal of these funds, indicating that

unless otherwise ordered, they would be returned to Serrano.

See 11 U.S.C. 349(b)(3). That same day, after entry of the

2. Earlier in 1987 Prudential had delivered the stock to the
United States District Court pursuant to a court order in
United States v. Serrano, Crim. No. 84-381(JP).

-5-

bankruptcy petition dismissal, the FDIC moved in the district

court for a writ of attachment and execution, to be served

upon the bankruptcy court and any custodian of Serrano's

funds in that court, attaching Serrano's funds after payment

of administrative expenses and directing their transfer to

the district court for application to the FDIC's judgment.

The district court allowed the motion on May 17, 1990,

ordering the bankruptcy court within twenty days to deliver

to the district court clerk the remaining funds belonging to

Serrano subsequent to the payment of the administrative

expenses, and directing that Serrano refrain from collecting

the funds. A copy of this attachment was shown to

Prudential's counsel on May 18, 1990, at a meeting of

creditors called by Prudential at its offices to discuss

disposition of the bankruptcy funds. Prudential made no

effort in the bankruptcy court to challenge the validity of

the attachment nor to argue that its own claim should be paid

from the bankruptcy funds in preference to the FDIC's claim.

On June 27, 1990, the bankruptcy court issued its

order disposing of all the assets in Serrano's case. The

bankruptcy court clerk, after paying various fees, expenses

and a child support claim, was directed by the bankruptcy

court to deliver the remainder to the district court clerk in

compliance with the attachment, said funds to remain subject

to any liens as per the bankruptcy court's previous order of

-6-

sale of the stock. Pursuant to this order, the bankruptcy

clerk paid over more than $560,000 to the clerk of the

district court. On August 10, 1990, the district court

ordered the funds disbursed to the FDIC.

Five days after the district court had entered its

disbursement order, Prudential made its first appearance in

this action. On August 15, 1990, Prudential moved the

district court to allow it to intervene in the instant action

and stay the scheduled disbursement to the FDIC, alleging

that it had a lien on the attached funds that had priority

over the FDIC's attachment. See Fed. R. Civ. P. 24.3 The

3. Federal Rule of Civil Procedure 24 provides, in relevant
part:

(a) Intervention of Right. Upon timely

application anyone shall be permitted to
intervene in an action: . . . (2) when
the applicant claims an interest relating
to the property or transaction which is
the subject of the action and the
applicant is so situated that the
disposition of the action may as a
practical matter impair or impede the
applicant's ability to protect that
interest, unless the applicant's interest
is adequately represented by existing
parties.

(b) Permissive Intervention. Upon timely

application anyone may be permitted to
intervene in an action: . . . (2) when an
applicant's claim or defense and the main
action have a question of law or fact in
common. . . . In exercising its
discretion the court shall consider
whether the intervention will unduly
delay or prejudice the adjudication of
the rights of the original parties.

-7-

district court stayed the disbursement pending ruling on

Prudential's motion to intervene. On August 20, 1990, Banco

Cooperativo, which also had never before been a party to this

action, moved to intervene, asserting that it had a priority

claim to the attached funds.4

On March 11, 1992, the district court, after

considering the parties' motions and exhibits submitted in

support of their claims (and without specifically indicating

whether it was ruling on the motions to intervene or on the

merits), denied Prudential's and Banco's claims and lifted

the stay of the disbursement of the funds to the FDIC.

Prudential and Banco appealed separately from the district

court'sfinalorder. Weconsolidatedtheirappeals,and nowaffirm.5

4. Appellee FDIC does not contest the existence of the
appellants' purported claims against Serrano. Banco
Cooperativo claims that it sued Prudential in a Puerto Rico
court in 1984, seeking damages for embezzlement by Serrano
during his tenure, in 1980, as an officer of Prudential's
Institutional Department. In 1985, Prudential filed a third-
party complaint against Serrano in that case, asking that
Serrano be held liable for the amount of any judgment which
may be entered against Prudential in the action brought by
Banco Cooperativo.

Banco claims that it eventually received a judgment
against Serrano in the amount of $295,000 plus interest.

(Banco does not explain how it obtained a judgment against
Serrano when it had sought damages only from Prudential.) At
the time Prudential filed its motion to intervene, its claim
against Serrano was still contingent, as final judgment had
not yet been rendered in its third-party action.

5. The district court had jurisdiction over this action
pursuant to 28 U.S.C. 1331, because the original plaintiff,
Municipality of Ponce, brought federal claims against the
defendants. This court has jurisdiction over the appeals

-8-

I.

No. 92-1652 - Prudential

Appellant Prudential raises three issues on appeal.

The first, discussed in Section A below, concerns the

validity of the FDIC's attachment, an issue implicitly

decided by the bankruptcy court's order to release Serrano's

funds in compliance with the attachment. We hold, infra,

that res judicata bars Prudential from raising the issue

anew.

The other two issues raised by Prudential,

discussed in Sections B and C below, concern the priority of

its alleged lien relative to the FDIC's attachment. The

questions of priority among liens on Serrano's property and

of the validity of Prudential's lien unlike the validity

of the FDIC's attachment formed no part of the bankruptcy

court's decision and so are not barred from being raised now.

The bankruptcy court, when it ordered the funds to be turned

over in compliance with the FDIC's attachment, made clear

that "said funds remain subject to any liens as per our order

of sale." The bankruptcy court's order of sale, dated April

27, 1989, approved the liquidation of the stock shares

"provided the proceeds from the surrender of the shares are

to be deposited with the Clerk of the United States

Bankruptcy Court for the District of Puerto Rico, in an

pursuant to 28 U.S.C. 1291.

-9-

interest bearing account with liens, if any, attaching to

said proceeds . . . ." (emphasis added). The court dismissed

the bankruptcy petition before ever adjudging the validity of

Prudential's alleged secured claim on the proceeds and

without deciding whether the FDIC's attachment took priority

over other liens on the proceeds. Res judicata, therefore,

does not bar Prudential from now raising those questions, and

we address them on their merits.

A. Validity of FDIC's Attachment

Prudential's first argument is that the district

court should have declared the FDIC's attachment null and

void because it was obtained in violation of the automatic

stay allegedly still in effect in Serrano's bankruptcy case.

See 11 U.S.C. 362. It is Prudential's theory that Fed. R.

Civ. P. 62(a), applying by force of Bankruptcy Rules 7062 and

9014, extended the automatic stay of 11 U.S.C. 362 for ten

days after the bankruptcy court had dismissed Serrano's

bankruptcy petition. This argument has met with little

success in other cases involving similar circumstances. See

In re de Jesus Daez, 721 F.2d 848, 851-52 (1st Cir. 1983); In

re Weston, 101 B.R. 202, 203-06 (Bankr. E.D. Cal. 1989),

aff'd, 967 F.2d 596 (9th Cir. 1992), cert. denied, 113 S. Ct.

973 (1993). Prudential's standing to challenge an alleged

violation of the automatic stay is also problematic. See In

re Pecan Groves of Arizona, 951 F.2d 242, 245 (9th Cir. 1991)

-10-

("Language from many cases indicates that, if the trustee

does not seek to enforce the protections of the automatic

stay, no other party may challenge acts purportedly in

violation of the automatic stay."). We do not pass on these

issues, however, as we are satisfied, infra, that Prudential

is barred by res judicata from raising the automatic stay as

a bar.6 We add that it would be difficult to pass on the

merits of the automatic stay issue from the record now before

us, which does not include a full report of the bankruptcy

proceedings and, in particular, omits much information

relevant to the stay and to orders issued lifting the stay in

respect to the district court proceeding in question.

This court recently explained:

The doctrine of res judicata bars all

parties and their privies from
relitigating issues which were raised or
could have been raised in a previous

action, once a court has entered a final
judgment on the merits in the previous
action. United States v. Alky

Enterprises, Inc., 969 F.2d 1309, 1314

(1st Cir. 1992). The essential elements
of res judicata, or claim preclusion, are

(1) a final judgment on the merits in an
earlier action; (2) an identity of
parties or privies in the two suits; and
(3) an identity of the cause of action in
both the earlier and later suits. Kale

6. Although the district court did not rely upon the grounds
of res judicata, and the parties ignored this theory on

appeal, we may do so as we need not limit ourselves to the
exact grounds for decision utilized below. Watterson v.

Page, 987 F.2d 1, 7 n.3 (1st Cir. 1993); Aunyx Corp v. Canon

U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied,

113 S. Ct. 1416 (1993).

-11-

v. Combined Insurance Co. of America, 924

F.2d 1161, 1165 (1st Cir.), cert. denied,

U.S. , 112 S. Ct. 69, 116 L. Ed.
2d 44 (1991).

Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir.

1992), cert. denied, 113 S. Ct. 1416 (1993) (emphasis in

original). "The normal rules of res judicata and collateral

estoppel apply to the decisions of the bankruptcy courts."

Katchen v. Landy, 382 U.S. 323, 334 (1966); Chicot County

Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 375-78

(1940); Turshen v. Chapman, 823 F.2d 836, 839 (4th Cir.

1987); see generally 1B James Wm. Moore et al., Moore's

Federal Practice 0.419[3] (2d ed. 1993). Orders, judgments

and decrees of the bankruptcy court from which an appeal is

not timely taken are final, 1 Collier on Bankruptcy

3.03[4], at 3-179 (Lawrence P. King ed., 15th ed. 1993), even

if erroneous. Union Joint Stock Land Bank v. Byerly, 310

U.S. 1, 7-8 (1940); Van Huffel v. Harkelrode, 284 U.S. 225,

227 (1931). While actions taken in violation of the

automatic stay are often characterized as void and without

effect, orders of the bankruptcy court modifying the stay or

finding no violation, even if erroneous, are entitled to

respect and are not subject to collateral attack. See Union

Joint Stock Land Bank, 310 U.S. at 7-8 ("The District Court

did not lose jurisdiction by erroneously construing or

applying provisions of the statute under which it

administered the bankrupt estate. Its order was voidable,

-12-

but not void, and was not to be disregarded or attacked

collaterally . . . ."); 1B Moore's Federal Practice

4.19[3-.2], at 635.

All the elements of res judicata are met here.

First, by its final order on June 27, 1990, transferring

Serrano's funds in compliance with the attachment, the

bankruptcy court rendered a final judgment that the

attachment was valid. After dismissing Serrano's bankruptcy

case, the bankruptcy court had retained jurisdiction to

determine whether to return the debtor's funds to him or to

another, and gave all the creditors, of whom Prudential was

one, eleven days to "express their positions as to the

disposal of these funds." Prudential's counsel appeared at

the hearing in the bankruptcy court directly before issuance

of the order dismissing the bankruptcy case, at which time

the court indicated that that order was contemplated and said

that it intended to grant the creditors ten or eleven days to

"let me know what I should do with these funds." In fact, on

May 17, 1990, Prudential's counsel invited the attorneys for

other creditors, including the FDIC's counsel, to a meeting

at Prudential's offices to discuss the disposition of the

funds. This meeting took place on May 18, 1990, at which

time the FDIC's counsel showed to Prudential a copy of the

attachment order it had just obtained in the district court.

Notwithstanding the foregoing, Prudential never advised the

-13-

bankruptcy court of its present contention that the FDIC's

attachment was invalid, being in supposed violation of the

automatic stay, nor did it urge the bankruptcy court to

refuse to honor the attachment. Prudential's inaction is in

notable contrast to that of another creditor, Shearson

Lehman, which, on June 5, 1990, moved the bankruptcy court to

declare the attachment null and void in violation of the

automatic stay the very same contention Prudential

belatedly raises now. Shearson Lehman's contention was

expressly denied by the bankruptcy court on June 27, 1990, in

its final order. In that same order, the bankruptcy court

disposed of the balance of the funds in express compliance

with the attachment, after first ordering the payment of

certain fees, expenses and other items. The bankruptcy

court's June 27 order constituted an appealable final

judgment. In re Parque Forestal, Inc., 949 F.2d 504, 508-09

(1st Cir. 1991). However, Prudential took no appeal.

Second, Prudential does not deny that, as one of

Serrano's creditors, it was a party to the bankruptcy

proceedings, nor that it was fully cognizant on May 16-18,

1990, of the bankruptcy court's dismissal of Serrano's case,

of its retention of jurisdiction, and of the FDIC's

attachment. Nor can Prudential deny that it knew of the

bankruptcy court's invitation to all creditors to express

their positions as to the future disposition of the funds.

-14-

Despite this, Prudential complains that since it

received no formal notice from the district court of the

FDIC's attachment, it was not a party to the dispute over the

attachment. We cannot see, for purposes of any action

Prudential might have taken in the bankruptcy court, that the

absence of notice from the district court was material.

Prudential was fully cognizant that the bankruptcy court

intended to take action in June on the question of disposal

of Serrano's assets, including the effect of the attachment.

Yet Prudential took no steps to pursue the matter before the

bankruptcy judge, including in particular to raise the

bankruptcy-related issue of the effect of the automatic stay

on the validity of the attachment. We are satisfied that

Prudential was a party to the proceedings in the bankruptcy

court over the ultimate disposition of Serrano's assets

proceedings that ended with the bankruptcy court's

recognition of the FDIC's district court attachment and its

direction to turn over the assets in compliance therewith.

Finally, Prudential's current challenge to the

attachment based on the automatic stay implicates the very

same underlying issue resolved by the bankruptcy court when

it gave effect to the attachment. The bankruptcy court's

final order of June 27, 1990 necessarily required it to have

determined whether or not the FDIC's attachment was valid so

as to be entitled to effect. The bankruptcy court clearly

-15-

had jurisdiction to make that determination and, in

particular, had jurisdiction to adjudicate any claim of

invalidity based on purported violation of the automatic

stay. See 11 U.S.C. 105(a) (authorizing bankruptcy court

to "issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title.");

11 U.S.C. 362(d), (f) (authorizing court to grant relief

from stay); 1 Collier on Bankruptcy 362.01[1], at 362-9

("[T]he bankruptcy court, as a court of equity exercising in

rem jurisdiction over assets in its custody and control, can

protect its jurisdiction by injunction, whether or not such

power is expressly set forth . . . ."); see generally In re

Continental Air Lines, 61 B.R. 758 (S.D. Tex. 1986)

(discussing jurisdiction of bankruptcy court over enforcement

of automatic stay).

As already noted, another creditor, Shearson

Lehman, moved in the bankruptcy court to have the attachment

declared null and void for precisely the same reasons

Prudential now advances, viz., that the FDIC had allegedly

violated the automatic stay when it sought and received an

order from the district court attaching bankruptcy assets

within one day after the bankruptcy court had dismissed

Serrano's petition.7 The bankruptcy court included in its

7. The text of Prudential's current brief on this issue
matches verbatim whole portions of Shearson's motion on this

issue before the bankruptcy court.

-16-

June 27, 1990 order a specific denial of Shearson Lehman's

motion, indicating by that ruling its absence of doubt

concerning the existence of jurisdiction to adjudicate the

claimed bar of the automatic stay.

Prudential never made a similar motion nor in any

way challenged the attachment in the bankruptcy court, nor

did it appeal from the bankruptcy court's order recognizing

the FDIC's attachment. Instead, after the bankruptcy court

had acted and the attachment had been fully executed,

Prudential petitioned to intervene in the attaching district

court for the purpose of arguing, post hoc, that the

bankruptcy automatic stay had invalidated the attachment.8

By the time of its petition, a final judgment giving effect

to the attachment was in effect in the bankruptcy court. As

res judicata now bars a collateral attack on the bankruptcy

court's judgment, we treat the FDIC's attachment as valid.

B. Pledge Agreement

Prudential says that, even assuming the FDIC had a

valid attachment on the stock proceeds, Prudential holds a

superior lien on the proceeds by virtue of a form signed by

8. While Prudential was not formally noticed as to the
attachment, it learned about it from the FDIC's counsel on
May 18, 1990, and, as an additional course, could have
promptly sought to intervene in the district court in hopes
of quashing the attachment before it was executed in the
bankruptcy court. Instead, Prudential waited for nearly
three months, until well after execution of the attachment,
before doing anything.

-17-

Serrano to open a brokerage account at Prudential (the

"Customer Agreement").9 Prudential contends that the

Customer Agreement operated, under Puerto Rico law, as a

"pledge" of any securities held in the brokerage account. By

virtue of this pledge, Prudential reasons, it acquired a lien

over the Bayam n Federal stock shares and their proceeds

prior to the FDIC's attachment because the stock was, up

until 1987, held in Serrano's account at Prudential.

The district court correctly rejected Prudential's

argument. Puerto Rico law provides, "A pledge shall not be

effective against a third person, when evidence of its date

is not shown by authentic documents." 31 L.P.R.A. 5023.

The Supreme Court of Puerto Rico has stated: "An authentic

9. The Customer Agreement provided, in part:

I [Serrano] agree, as follows, with
respect to all the accounts in which I
have an interest alone or with others,
which I have opened or open with you
[Prudential] for the purchase and sale of
securities and commodities:

. . .

Any and all credit balances,
securities, or contracts relating thereto
and all other property of whatever kind
belonging to me or in which I have an
interest held by you or carried for my
accounts shall be subject to a general
lien for the discharge of my obligations
to you (including unmatured and
contingent obligations) however arising .
. . .

-18-

document is a legalized document, which is publicly attested,

which is legally valid by itself." Ramos Mimoso v. Tribunal

Superior, 93 P.R.R. 538, 540 (1966). A private agreement or

writing is not an authentic document; a document verified

before a notary public is an authentic document. In re

Santos & Nieves, Inc., 814 F.2d 57, 60 (1st Cir. 1987); Ramos

Mimoso, 93 P.R.R. at 541. The record here supports the

district court's finding that no notarized or other properly

authenticated document evidenced the date of Serrano's

alleged pledge of the stock shares. The only document

alleging to show the date of the supposed pledge is the

Customer Agreement, which is merely signed by the parties and

not notarized.

Prudential concedes that no notarized or otherwise

"authentic" document exists to evidence the date of the

pledge, but argues that it is sufficient that the purpose of

the authentic document requirement was fulfilled. Prudential

filed a copy of the Customer Agreement in 1987 with the clerk

of a court in which criminal proceedings against Serrano were

being conducted, and now argues that this filing satisfies

the policy behind 31 L.P.R.A. 5023. However, the authentic

document rule is "a formal and absolute rule" that is

strictly construed. In re Supermercados San Juan, Inc., 575

F.2d 8, 12 (1st Cir. 1978); Trueba v. Zalduondo, 34 P.R.R.

713, 716 (1925). Neither section 5023 nor any cases

-19-

interpreting it support Prudential's theory that the

authentic document requirement can be fulfilled simply by

filing a copy of an unnotarized document in court.

Prudential attempts to analogize this case to

Trueba v. Zalduondo, 34 P.R.R. 713 (1925), in which the

Supreme Court of Puerto Rico held that a transfer of

corporate stocks as collateral for a loan that was recorded

in the corporations' official records was valid against

later-attaching third parties, even though the transfer did

not comply with the authentic document rule codified in the

predecessor statute to 31 L.P.R.A. 5023. However, Trueba

expressly held that section 13 of the Private Corporations

Act, (now codified as 14 L.P.R.A. 1509), and not the

predecessor to 31 L.P.R.A. 5023, governed under those

circumstances. The Trueba decision "was based on the fact

that stock so transferred would be authenticated by the

public and formal records of the corporation as a transfer of

a security interest." In re Supermercados San Juan, Inc.,

575 F.2d at 12. The Trueba court did not create an exception

to section 5023 and, in fact, reiterated that the authentic

document rule "is a rigid rule." Trueba, 34 P.R.R. at 716.

Because Prudential does not contend that the Private

-20-

Corporations Act, as opposed to 31 L.P.R.A. 5023, governs

this case, Trueba is inapposite.10

The district court correctly held that Prudential's

purported pledge agreement did not comply with the authentic

document requirement of 31 L.P.R.A. 5023 and thus was not

valid against the FDIC as a pledge.

C. Puerto Rico Agency Law

Prudential argues that it acted as Serrano's agent

for the purchase and sale of securities and, as such,

acquired a statutory lien on all securities held on behalf of

Serrano, including the Bayam n Federal stock. Prudential

points to a Puerto Rican statute providing that, "The agent

may retain the things which are the objects of the agency in

pledge until the principal pays the indemnity and

reimbursement referred to in the two preceding sections [

4462, 4463]." 31 L.P.R.A. 4464. Prudential misinterprets

the statute, however. Even if Prudential were Serrano's

agent, section 4464 does not give it a lien on the stock

proceeds superior to the FDIC's attachment because Prudential

10. Prudential's citation of In re Las Colinas, Inc., 294 F.

Supp. 582 (1968), vacated and remanded, 426 F.2d 1005 (1st

Cir. 1970), is similarly unhelpful. Even if parts of it
remain good law, the relevant issue in that case was whether
certain collateral, transferred after a pledge agreement was
notarized and signed, constituted a valid pledge of that
collateral. Id. at 602-03; see also Omega Int'l Corp. v.

Interstate Steel de Puerto Rico, Inc., 590 F. Supp. 844, 850

(D.P.R. 1984) (explaining In re Las Colinas). Here,

Prudential concedes that there was no notarized pledge
agreement.

-21-

did not "retain the things," viz., the Bayam n Federal stock

certificates. The stock was transferred to a court in 1987

pursuant to a court order, and was subsequently liquidated.

We find no authority for the proposition that section 4464

creates statutory liens on things, let alone their proceeds,

which are not retained by the agent. For this reason alone,

the district court's ruling that Prudential does not have a

lien over the stock pursuant to Puerto Rico agency law was

plainly correct.11

The district court did not err in finding that

Prudential had no lien with priority over the FDIC's

attachment and in dismissing Prudential's claims over the

funds attached by the FDIC.12

II.

No. 92-1652 - Banco Cooperativo

Appellant Banco Cooperativo says that it obtained a

judgment and award of damages against Serrano on September

15, 1987 from a Puerto Rico court in a civil action. Banco

11. The district court also found that section 4464 was
inapplicable because Serrano's alleged liability to
Prudential is unrelated to the stock shares previously held
in his account and because the liability was merely
contingent, not due and payable. See I-II Jose Puig Brutau,

Fundamentos de Derecho Civil 545-46 (2d ed. 1976).

12. Prudential also makes various arguments based on New
York law. We do not consider any of them as Prudential makes
no argument on appeal that the district court erred in
determining that Puerto Rico law, not New York law, governs
this case. See Fed. R. App. P. 28(a)(3), (5).

-22-

never executed the judgment, attached the funds that are the

subject of this appeal, or otherwise obtained a lien on any

of Serrano's property. Banco also concedes that the FDIC

obtained a valid judgment against Serrano on October 16,

1989, and properly executed the judgment by attaching the

funds at issue on May 17, 1990. Banco contends, nonetheless,

that Puerto Rico law gives its claim on Serrano's assets

priority over the FDIC's.

We agree with the district court that the statute

on which Banco relies, 31 L.P.R.A. 5194, does not apply

here. The first provision of Title 31, Chapter 399 provides:

"Credits shall be classified for their graduation and payment

in the order and manner specified in this chapter." 31

L.P.R.A. 5191. 31 L.P.R.A. 5194 provides in part:

With regard to all other personal and
real property of the debtor, preference
shall be given to: . . .
(4) Indebtedness which without a
special privilege appear:
(a) In a public instrument.
(b) In a final judgment, should
they have been the object of
litigation.
These credits shall have preference
among themselves according to the
priority of dates of the instruments and
of the judgments.

Banco interprets section 5194(4) to mean that its claim to

the funds has "preference" over the FDIC's claim because

Banco obtained its judgment two years before the FDIC was

awarded its judgment. Under Banco's interpretation, section

-23-

5194(4) makes irrelevant the fact that the FDIC attached the

property in dispute and Banco did not.

The Supreme Court of Puerto Rico has consistently

held otherwise, finding that 31 L.P.R.A. 5194 does not

supplant the standard rule that, as between two judgment

creditors without other liens, the first creditor to attach

has priority. In Oronoz & Co. v. Alvarez, 23 P.R.R. 497

(1916), the Court rejected the argument that a creditor

always has priority if it has a judgment antedating the

judgment of other creditors. Id. at 500. The Court

explained:

We have recently decided that mere
priority in judgment gives the prior
creditor no lien. Auffant v. Succession

of Manuel de J. Ramos et al., [23 P.R.R.

385 (1916)]. An attachment or other
similar step is necessary to give the
judgment a priority and as between
judgment creditors the first to attach
has the priority. It is a race of
diligence. The priority of payments to
which sections 1822 et seq. of the Civil

Code [31 L.P.R.A. 5191 et seq.] relate

has no application to attachments.

Id. The Court reaffirmed the first-to-attach rule in Puerto

Rico Bedding Mfg. Corp. v. Herger, 91 P.R.R. 503 (1964),

writing that, "There is no question that among common

creditors the first one who attaches has preference over the

others . . . ." Id. at 507. The Court clarified that the

preference created by attachment "does not go beyond the

right which the debtor may have over the property attached,"

-24-

meaning that valid liens already on the property when

attached cannot be defeated by an attachment. Id. In

Empresas Capote, Inc. v. Superior Court, 3 P.R. Sup. Ct.

Off'l Translations 1067 (1975), the Supreme Court of Puerto

Rico reiterated, "It should be remembered that, grounded on

the axiom prior tempore portior jure, even among common

creditors, '. . . the first one who attaches has preferences

over the others, but such preference does not go beyond the

right which the debtor may have over the property attached.'"

Id. at 1078-79 (quoting Puerto Rico Bedding Mfg. Corp. v.

Herger, 91 P.R.R. 503, 507 (1964)).

Some provisions of Chapter 399 other than 31

L.P.R.A. 5194 create statutory preferences, a concept

equivalent to statutory liens, on certain types of property.

These statutory preferences take priority over attachments

even if the preference holder does not formally attach the

property. For example, 31 L.P.R.A. 5192(1) creates, in

essence, a seller's lien "for the amount of the sale of [the]

personal property which may be in possession of the debtor to

the extent of the value of the same." 31 L.P.R.A. 5192(1);

see In re Jack's Club & Hotel, 138 F. Supp. 620, 622 (D.P.R.

1956). Thus, the credit of a manufacturer who was not paid

for mattresses and bed frames it sold to a retail store had

priority over the credit of another creditor who attached the

items in the store. Puerto Rico Bedding Mfg. Corp., 91

-25-

P.R.R. at 507-09. While the attachment created a preference,

or lien, in favor of the attaching creditor, "such preference

does not go beyond the right which the debtor may have over

the property attached." Id. at 507-08. That is, 31 L.P.R.A.

5192, without the need for execution or attachment, gives

the seller an interest in the property sold that diminishes

the debtor's interest in the property and that cannot be

defeated by attaching creditors. See also Heirs of Garriga

v. O'Meara, 28 P.R.R. 332, 334-35 (1920) (discussing priority

of the statutory preferences created by 31 L.P.R.A. 5192

over attachments).

In contrast, 31 L.P.R.A. 5194(4) does not create

a seller's lien or any other type of statutory lien on

property of the debtor. It does not refer to specific

property of the debtor or specific transactions between the

creditor and debtor. Compare 31 L.P.R.A. 5192(3) (creating

lien for the costs of transportation on goods transported by

creditor) and 31 L.P.R.A. 5192(6) (creating lien on fruit

crops in favor of creditor who provided seeds) with 31

L.P.R.A. 5194(4) (referring to no specific property). The

silence of 5194(4) implies that a general judgment creditor

must execute its judgment by attaching property, such as the

debtor's cash or stock certificates, before it can claim any

sort of "lien" on that property.

-26-

Here, the FDIC and Banco were both judgment

creditors, but the FDIC, by attaching the stock proceeds,

obtained a lien on those proceeds which has priority over

Banco's unexecuted judgment against the debtor. Banco had no

lien or other legally-recognized property interest in

Serrano's assets at the time of the attachment. All it had

was an unsecured credit in its favor as the result of a court

judgment. Thus, the FDIC's attachment reached all of the

funds released by the bankruptcy court and is not subject to

a claim by Banco.

For these reasons, the district court did not err

in determining that 31 L.P.R.A. 5194(4) does not give

Banco, which did not execute its judgment, priority over the

FDIC, which obtained a valid attachment of the funds.13

13. We have considered and found no merit in Banco's myriad
other arguments. For example, we do not have the authority
to declare Oronoz & Co. to be wrongly decided by the Puerto

Rico Supreme Court or mistranslated by the official court
translator, as Banco urges us to do. The case of Rodr guez

v. Solivellas & Co., 49 P.R.R. 618 (1936), which discussed 31

L.P.R.A. 5194, held that a prior mortgage on certain
property had priority over a cautionary notice of attachment
on the property. It did not hold, as appellant maintains,
that attachments have no effect on the rights of judgment
creditors with prior claims, but relied instead upon the same
principle discussed above, that "[an] attachment is valid
only as regards any balance left after cancelling the former
security." Id. at 623.

-27-

Therefore, the district court properly dismissed Banco

Cooperativo's claim.14

III.

In conclusion, we find no error and so affirm the

district court's order in Appeal No. 92-1652, dismissing the

claims of Prudential, and in Appeal No. 92-1651, dismissing

the claim of Banco Cooperativo to the funds held by the

court.

Affirmed. Costs to appellee.

14. Banco complains that the district court should have
"reprobated" or sanctioned the FDIC for acting in bad faith
when it obtained its attachment. Banco did not raise this
issue in a timely fashion, waiting until it moved for
reconsideration of the district court's Opinion and Order to
bring the issue to the court's attention. Consequently, we
will not consider it on appeal. See Brown v. Trustees of

Boston Univ., 891 F.2d 337, 352 (1st Cir. 1989), cert.

denied, 496 U.S. 937 (1990). Moreover, we find no evidence

in the record to support Banco's allegations of bad faith on
the FDIC's part.

-28-